**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DIANE L. ROYALL,<br><br>     *Plaintiff,*<br><br>  v.<br><br>RESURGENT CAPITAL SERVICES, LP,<br>*et al.,*<br><br>     *Defendants.* | Case No. 26-cv-567-ABA |

**MEMORANDUM OPINION**

Defendants Resurgent Capital and Bryan Faliero have moved to enforce a settlement agreement with Plaintiff Diane Royall. Ms. Royall is proceeding *pro se*. The motion will be granted, as discussed below.

## I.    BACKGROUND

On January 8, 2026, Ms. Royall filed a lawsuit against Resurgent Capital and Bryan Faliero in the District Court of Baltimore City, Baltimore County, Maryland. ECF No. 4 at 1. Ms. Royall alleges that Defendants failed to validate a debt, failed to correct a credit reporting error, improperly reported a debt, engaged in deceptive collection practices, and misrepresented debt status. *Id.* On February 11, 2026, Defendants removed this case to federal court, construing Ms. Royall's claim as having been asserted at least in part under the Fair Debt Collection Practices Act, (FDCPA), 15 U.S.C. § 1692. ECF No. 1 (notice of removal); ECF No. 4 (complaint).

On February 2, 2026, prior to removal, Defendants' counsel emailed Ms. Royall with an offer to settle the dispute:

> My clients have authorized me to offer you forgiveness of your
> debt and a request for deletion of any remaining tradelines in
> exchange for a general confidential release and a dismissal of

1

> the pending lawsuit with prejudice. This offer will remain open until 5:00 p.m. EST this Friday, February 6. If not accepted before that time it will be withdrawn.

ECF No. 16-3 at 6.

Ms. Royall responded the same day (February 2) and messaged back: "Good evening **offer accepted** and I will look for the offer in writing." *Id.* at 5—6 (emphasis added).

In response, on February 5 at 2:36 pm, Defendants' counsel sent Ms. Royall a "release for [her] signature." *Id.* at 5. That email attached a four-page contract entitled Confidential Settlement Agreement and Release of Liability (the "Release"). ECF No. 16-4. The Release was consistent with Ms. Burnette's February 2 email, but also addressed some matters that were not addressed in the email exchange between the parties.

Ms. Royall did not sign the release. Instead, on February 5 at 3:59 pm she responded, "Greetings, once I sign this form I'll receive a debt release letter and removal from my credit report? Please confirm." ECF No. 16-3 at 5. Apparently because of the formatting of Ms. Royall's email message (which appeared below Ms. Burnette's 2:36pm email rather than above it), Ms. Burnette did not see that Ms. Royall had responded, so Ms. Burnett stated, "Ms. Royall, your email was blank and contained no attachments, can you please resend your message?" *Id.*

The next day (February 6) Ms. Royall sent the following email:

> To settle this disagreement,
>
> 1. I'm seeking $500 to cover my expense of fillings, gas and commute. I have been trying to work with Resurgent Capital Services and Bryan Faliero for 2 years to have the debit removed from my credit file.

> 2. A letter stating the debit is paid and full and deletion from my credit report.
>
> If you will forward the appropriate forms I will sign today.

ECF No. 16-3 at 4. In other words, she sought to amend the settlement terms she had previously accepted, adding a demand for $500.

Defendants' counsel responded the same day and informed Ms. Royall that she had already accepted a settlement agreement, and but they were open to considering minor revisions she wanted to make to the agreement. *Id.* at 3. Ms. Royall promptly responded by reiterating her prior demand and providing Defendants' counsel with her Zelle information. *Id.* Defendants' counsel refused. *Id.* ("I made you an offer which you accepted. We are settled at the very clear terms agreed upon below. It is too late for you to try to negotiate something different."). Ms. Royall indicated that if the terms were different, she would agree to the settlement. *Id.* (reiterating her proposed terms including "$500 sent by Zelle"). Defendants' counsel responded by informing Ms. Royall she would move to enforce the settlement agreement. *Id.* at 2. Ms. Royall proceeded to submit a request for a case management conference, which the Court held on March 19, 2026. ECF Nos. 12 & 15.

Defendants filed a motion to enforce the settlement agreement. ECF No. 16. They contend that when Ms. Royall responded on February 2 at 7:31 pm, "Good evening offer accepted and I will look for the offer in writing," she accepted—and thus was bound by—the terms set forth in Ms. Burnette's 6:03 pm email. *See* ECF No. 16-3 at 5–6. But Defendants also go further and contend that by accepting those terms, she should also be deemed bound by the more expansive terms set forth in the Confidential Settlement Agreement and Release of Liability that defense counsel sent three days after Ms.

Royall's acceptance. *See* ECF No. 16-5 (Defendants' request for an order requiring the parties to "execute a settlement agreement in the form and on the terms set forth in Exhibit B to Defendants' Motion to Enforce"). Ms. Royall has not filed any response in opposition to the motion.

## II.    DISCUSSION

"District courts have inherent authority, deriving from their equity power, to enforce settlement agreements." *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). "To enforce a settlement agreement under its inherent equity power, the district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Swift v. Frontier Airlines, Inc.*, 636 F. App'x 153, 154–55 (4th Cir. 2016). "Having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement . . . and the fact that the agreement is not in writing does not render it unenforceable." *Hensley*, 277 F.3d at 540.

Defendants' motion here presents two questions: (1) Has Plaintiff agreed to settle this case? (2) If so, are the enforceable terms set forth in Ms. Burnette's February 2, 2026 email, or instead in the Confidential Settlement Agreement and Release of Liability that defense counsel sent on February 5? For the following reasons, the Court concludes that there is an enforceable settlement agreement, but that the agreed-upon terms are those set forth in Ms. Burnette's February 2 email, not the February 5 proposed Release.

Under Maryland law, "settlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts." *Maslow v. Vanguri*, 168 Md. App. 298, 316 (2006). The elements of a

contract are offer, acceptance, and mutual consideration. *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004). To enforce a settlement agreement a court must conclude that the agreed-upon terms were "sufficiently definite to clearly inform the parties to it of what they may be called upon by its terms to do," *Maslow*, 168 Md. App. at 322 (quoting *Robinson v. Gardiner*, 196 Md. 213, 217 (1950)), and were "sufficiently clear and definite in order that the courts, which may be required to enforce it, may be able to know the purpose and intention of the parties." *Id.* "[I]f an agreement for complete settlement of the underlying litigation, or part of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily," *i.e.* without an evidentiary hearing, "as long as the excuse for nonperformance of the agreement is 'comparatively insubstantial.'" *Hensley*, 277 F.3d at 540 (quoting *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)).

Here, the documentary record establishes that when Ms. Royall responded that she "accepted" Defendant's February 2, 2026 "offer," the terms set forth in Ms. Burnette's February 2 email became an enforceable contract between the parties.

To start, the February 2 email constitutes a clear offer. An offer "is an expression by the offeror of his agreement that something over which he at least assumes to have control shall be done or happen or shall not be done or happen if the conditions stated in the offer are complied with." *Maryland Supreme Corp. v. Blake Co.*, 279 Md. 531, 539 (1977). Defendants made an offer to forgive Ms. Royall's debt and request that the credit bureaus delete any reporting of her debt in exchange for a general confidential release and a dismissal of her lawsuit with prejudice. ECF. No. 16-3 at 5—6.

Ms. Royall accepted Defendants' offer. Acceptance is demonstrated by an "actual meeting of the minds regarding contract formation." *Cochran v. Norkunas*, 398 Md. 1,

23 (2007). "Acceptance may be manifested by acts as well as by words." *Id*. Ms. Royall accepted the offer by responding to Defendants' message with "Good evening *offer accepted* and I will look for the offer in writing." ECF. No. 16-3 at 5 (emphasis added). Ms. Royall also conceded that she agreed to Defendants' offer. ECF No. 12 at 1—2 ("Lauren Burnette emailed me as their counsel asking that they will remove if I sign a confidential settlement. *Initially I emailed yes* but a few days passed and I was about to think about it and read and before the deadline I emailed requesting a settlement of $500 to cover my court cost and taking the bus and Uber and the day off of work.") (emphasis added).

The parties had adequate consideration of their agreement. Under Maryland law, forbearance to exercise a legal right is sufficient consideration to support a promise. *Beall v. Beall*, 291 Md. 224, 230 (1981). The consideration for the agreement was Defendants surrendering any further interest they had in Plaintiff's debt and requesting that the credit bureaus delete any remaining information. ECF. No. 16-3 at 5–6. In exchange Ms. Royall agreed to release Defendants from all liability and dismiss her lawsuit. *Id*. Thus, the parties' agreements had mutual consideration and constituted a complete agreement.

The material terms of the parties' agreements were clear and there is no genuine disagreement about the existence or terms of that agreement. Ms. Royall argues that an agreement between the parties does not exist because she asked for additional material terms before February 6, 2026, and Defendants asked if she wanted to make changes to the settlement agreement. Regardless of whether Ms. Royall's request for $500 was reasonable, under the law the parties' agreement to settle the dispute for the terms set forth in Ms. Burnette's February 2, 2026 email is an enforceable contract.

Once Ms. Royall accepted Defendant's offer, which was accompanied by consideration, she was bound by those terms. Once an offer is accepted and a contract is formed, "its binding force cannot be affected by subsequent communications unless they amount to a mutual agreement to rescind or abandon the contract." *Potter v. McCauley*, 196 F. Supp. 636, 638–39 (D. Md. 1961). Ms. Royall entered into a binding agreement with Defendants on February 2, 2026, and any subsequent unilateral modification from Ms. Royall would not be part of the contract. ECF. No. 16-3 at 5. Therefore, there is no genuine disagreement about the existence of the agreement or its terms.

Defendants indicated that they had no intention to rescind or abandon their contract when they asked Ms. Royall if she wanted to make changes to the agreement. In their email response to Ms. Royall, Defendants stated that they were not open to negotiation but instead were giving Ms. Royall the opportunity to make minor revisions. *Id*. at 3. As such, the material terms of the agreement, as set forth in defense counsel's February 2 email, are clear.

For these reasons, Defendants are entitled to an order dismissing this case with prejudice and compelling Defendants to perform on their agreement of "forgiveness of [Plaintiff's] debt and a request for deletion of any remaining tradelines." *See* ECF No. 16-3 at 6. But the question remains: In addition to an order with those terms, are Defendants entitled to an order requiring the parties to "execute a settlement agreement in the form and on the terms set forth in Exhibit B to Defendants' Motion to Enforce," as Defendants request (*see* ECF No. 16-4)? The answer is no.

As discussed above, Ms. Royall only agreed to the terms of the February 2 email, not the terms of the subsequent February 5 email. There is nothing in the record to indicate that Ms. Royall accepted the terms set out in the February 5 email, as she

expressly stated, "If you change your mind that's a settlement I can agree too." ECF No. 16-3 at 2. Further, the February 5 email had new terms, including Ms. Royall agreeing to not publicly disclose the settlement (though even if that were an enforceable term, Defendants have waived it by filing the current motion). ECF No. 16-4. Thus, the document sent by Defendants on February 5 constituted a new proposed contract, which Ms. Royall did not agree to, and is not bound by.

## III.   CONCLUSION

For these reasons, the motion to enforce settlement agreement (ECF No. 16) is GRANTED insofar as the Court concludes that the parties are bound to the terms of Ms. Burnette's February 2, 2026, email, but is DENIED with respect to Defendant's contention that Ms. Royall agreed to the various additional terms contained in the proposed settlement agreement (ECF No. 16-4). A separate order follows.


Date:   July 30, 2026                                    _____*/s/*_____
                                                         Adam B. Abelson
                                                         United States District Judge